■ JOHN SYNAKOWSKI, Respondent, v TERRI SYNAKOWSKI, Appellant. [594 NYS2d 852] —Yesawich Jr., J. Appeal from an order of the Supreme Court (White, J.), entered May 3, 1991 in Fulton County, which, *inter alia,* granted custody of the parties' children to plaintiff.

The parties, married in 1982, have two daughters. In August 1989 plaintiff commenced the underlying divorce action. When court-ordered joint temporary custody of the children proved unworkable, plaintiff was awarded sole custody on a temporary basis. Thereafter, following a plenary hearing, Supreme Court determined that it would be in the children's best interest for plaintiff to retain sole custody, with defendant having extensive visitation privileges. Defendant appeals.

To arrive at a custody determination that is in the child's best interest *(see,* Domestic Relations Law § 70; *Matter of Dinino v Deima,* 173 AD2d 1017, 1018), many factors must be weighed, including the ability of the parent to meet the child's needs, the type of home environment provided, stability of that environment, relative fitness of the parents, and the child's wishes. Because these individual aspects interact to create a complex picture of each parent's living situation and the quality of care that they will provide, no single factor is dispositive. Further, the determination of the trial court, which possesses the ability to directly observe and evaluate the sincerity of the parties, should, if it has a substantial basis in the record, be accorded great respect *(see, Eschbach v Eschbach,* 56 NY2d 167, 173; *Matter of Schwartz v Schwartz,* 144 AD2d 857, 859, *lv denied* 74 NY2d 604).

Here, Supreme Court found both parents loving and fit; however, joint custody, the solution preferred by all of the experts involved, was perceived to be unworkable because of the acrimony between the parties. In granting custody to plaintiff, the court noted that he had developed a closer association with the children and that continuing such custody would minimize disruption in the children's lives; these findings are amply supported in the record.

Plaintiff is currently residing in the former marital home, and placing custody with him allows the children, who at the time of the hearing were five and seven years old, to remain in the same school where they are doing exceedingly well and have developed many friendships. Moreover, all the witnesses attested to the high level of interaction and concern plaintiff exhibited for the children. Being a schoolteacher, he has more time in the afternoons and in the summer to spend with them,

another factor which weighs heavily in his favor *(see, Matter of Clary v Bond,* 186 AD2d 869, 870; *Matter of Schwartz v Schwartz, supra,* at 860). Not unimportantly, both the Law Guardian and the probation officer (who conducted the home study evaluation) urged that the children be placed with plaintiff in the event that joint custody was rejected.

The only element in defendant's favor was reflected in the testimony of a psychologist, Dario Stucci, who evaluated the parents at the request of Supreme Court. As a result of tests administered to the parties, Stucci concluded that defendant manifested no potential psychological problems and found her to be more stable, mature and "socially connected" than plaintiff. Stucci's analysis of plaintiff's test results, on the other hand, led him to believe that plaintiff was somewhat overinvolved with and dependent upon his daughters for emotional fulfillment, that he was depressed and anxious, and that he has a controlling and rigid nature which, Stucci opined, might stifle the children's psychological development.

It is telling in this regard, however, that even Stucci recommended joint custody as his first choice; he commented that plaintiff was "a very dedicated father", "very knowledgeable in child rearing", had "compassion and concern for his children", displayed "very good" parenting skills, that he was not "abnormal" and that his problems would not affect his ability to care for the children. Furthermore, both children were examined and found to be healthy and well adjusted, despite having been primarily in plaintiff's care for their entire lives. If joint custody was unworkable, only then did Stucci advocate placing the children with defendant; it is worth noting in this regard that this recommendation was based, to some degree, on Stucci's view that all else being equal, young children should be placed with the same-sex parent.

While the mental health or stability of a parent is a factor with which the court must obviously concern itself in a custody dispute, it need not necessarily be controlling *(see, Rosenblitt v Rosenblitt,* 107 AD2d 292, 294). The fact that the custody arrangement decreed is contingent upon plaintiff continuing to attend counseling confirms that Supreme Court did indeed consider this factor in arriving at its disposition *(see, Matter of Eastman v Drennen,* 122 AD2d 397, 399).

Given all of the circumstances, including the extensive testimony from lay witnesses regarding plaintiff's involvement in his children's upbringing from the time they were born and his willingness to encourage and assist their growth and learning, and the recommendations of the probation officer

and the Law Guardian, we find that the custody award has a sound and substantial basis in the record and should not be disturbed.

Mercure, Crew III and Casey, JJ., concur.

Mikoll, J. P. (dissenting). I respectfully dissent.

In adjudicating custody rights, the court must determine " 'what is for the best interest of the child' " *(Eschbach v Eschbach,* 56 NY2d 167, 171, quoting Domestic Relations Law § 70). Despite the deference to be given to the trial court, we should not hesitate to set aside a finding that lacks substantial basis in the record *(see, Matter of Rozelle v Rozelle,* 184 AD2d 973).

Supreme Court's award of custody to plaintiff was made conditional upon his continuing with counseling. This expressed reservation regarding plaintiff's ability echoes the recurring evidence in the record of plaintiff's disturbing personality characteristics which will ill serve the best interest of his two young daughters. Though Probation Officer Joelle Flint opted first for joint custody and then for custody in plaintiff, she too makes reference to "quirks in [plaintiff's] personality". These include obsession with his daughters, which Flint characterized as a problem needing to be addressed. Though she found that the children's *present* best interest is to reside with plaintiff, Flint noted that plaintiff will encounter difficulties in dealing with his daughters. She notes a role-reversal in the family with plaintiff playing the mother's role. Plaintiff blames defendant's other interests while she blames the situation on plaintiff controlling every aspect of the daughters' lives and excluding her therefrom. Flint is overly impressed by the uniqueness of plaintiff's all-encompassing submergence of himself in the children's lives, commenting that he should not be punished for his demonstrative and affectionate nature.

The most helpful of the assessments comes from the only professional competent to assess plaintiff and defendant, Dario Stucci. The testimony of Stucci, a psychologist from the State Office of Mental Health who examined the parties at the request of Supreme Court, indicates that defendant is a better overall role model for the children in that she is more psychologically stable, positive, mature and more socially connected, as well as better able to provide a female role model from which her daughters can benefit. In evaluating plaintiff, Stucci notes his overinvolvement and parent-enmeshment, and feels that his need to be overcontrolling will hurt the children in

their long-term development both psychologically and emotionally. In this regard, Stucci's observations are consistent with those of Flint. Stucci also notes that plaintiff has an overdependency on the children for his personal fulfillment and that he exudes anxiety and a depressive tendency. This behavior was exemplified by plaintiff's lack of composure and tendency to cry during interviews and during the trial.

I also find worrisome plaintiff's showering with his two daughters. Defendant claims that plaintiff was nude when this occurred and only ceased when she objected. Plaintiff admits that he showered with the children but with his bathing suit on. This is totally unacceptable behavior and casts plaintiff's stability into question.

The report prepared by the Law Guardian representing the children before Supreme Court is not helpful. He notes that the children indicated that plaintiff told them what to say when being interviewed. He recommends that joint custody be awarded and, if this is not possible, he then recommends custody to plaintiff based solely on the children's preference. Such opinion reflects no independent assessment of the best interest of the children. Though he concludes that either parent is fit, he conditions the statement with references to the reports of Flint and Stucci, both of which raise some questions about plaintiff's stability. There is an unmistakable conclusion that the Law Guardian's recommendation is hesitant and without an appropriate underpinning.

The primary considerations in determining the best interest of the children are the ability to provide for the children's emotional and intellectual development, the quality of the home environment and the parental guidance provided (*Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946, 947). We are of the opinion that the circumstances here, in combination with Stucci's report, dictate that sole custody of the children should be transferred to defendant with liberal visitation rights to be accorded to plaintiff. The matter should be referred to Supreme Court for the establishment of an appropriate visitation schedule.

Ordered that the order is affirmed, without costs.